UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

TANESHIA HAZARD,                          :
          Plaintiff,            :
                                        :
    v.                                   :       C.A. No. 11-499PAS
                                          :
MICHAEL J. ASTRUE,                        :
Commissioner of the Social Security       :
Administration,                           :
          Defendant.            :

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion of Plaintiff Taneshia Hazard ("Plaintiff" or "Ms. Hazard") for reversal of the decision of the Commissioner of Social Security (the "Commissioner") denying disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"). Plaintiff challenges the decision on two grounds: first, she contends that the Administrative Law Judge ("ALJ") erred in improperly affording limited probative weight to the opinion of her treating physician, Dr. Thamara Davis; second, Plaintiff seeks a remand for consideration of new evidence, some of which she claims she attempted to submit to the Appeals Council. Defendant Michael J. Astrue ("Defendant") has filed a Motion for an order affirming the Commissioner's decision.

The Court finds no error in the ALJ's determination that the opinion of Dr. Davis that Plaintiff was incapable of sustained gainful employment was not supported by clinical findings and was inconsistent with the conclusions of other treating physicians and other substantial evidence in the record. Rather, the Court finds that the ALJ's findings were well supported by substantial evidence. The Court further finds no basis for remanding this matter with respect to

any of the purportedly new evidence.  Some of it was made known to the Appeals Council and

there is no egregious error in the Commissioner's decision to disregard it; most of it is

cumulative of other record evidence; and the balance is not material because Plaintiff failed to

demonstrate that it is pertinent to the time period relevant to this appeal.  Accordingly, Plaintiff's

Motion to Reverse or Remand Commissioner's Decision (ECF No. 6) is DENIED and the

Commissioner's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 7)

is GRANTED.

## I.    <u>Background Facts</u>

Plaintiff Taneshia Hazard was born in 1971; she is currently forty-one years old.  Tr. 32.

She completed high school and has no vocational training.  <u>Id.</u>  Prior to September 2008, she

claims she worked part-time in a variety of cashier positions, never for more than twenty-five

hours a week.  Tr. 38, 156-157.  She has not worked at all since September 2008.  Tr. 38, 142,

156.  Plaintiff claims she cannot work because of psychiatric impairments, including depression,

paranoia and hallucinations (hearing voices and seeing demons).  Tr. 16-17, 35, 38.  Plaintiff also

maintains that she is disabled due to high blood pressure and ankle, feet, back and knee ailments.

Tr. 16, 36.

Plaintiff's medical records from 2009 and 2010 demonstrate that she was examined by or

received treatment from various providers at Providence Community Health Centers, Gateway

Healthcare, Inc. ("Gateway"), Miriam Hospital and Jewish Family Services.

At Providence Community Health Centers, Plaintiff received care from January 21, 2009,

through March 19, 2009, Tr. 211-230, mostly from Dr. Ivan Wolfson, who completed an

Examination Report.  Tr. 411-414.  In reviewing her physical limitations, Dr. Wolfson opined

that she could only walk and stand for less than two hours out of eight.  In reviewing her mental

limitations, Dr. Wolfson concluded that, while they caused marked limitations resulting in his opinion that she was unable to work at the time of his examination on January 21, 2009, he also noted that her prognosis for eliminating or reducing her conditions through medication and other treatment was good.  Id.

The Urban League Shelter referred Plaintiff to Gateway, where she was seen in February 2009 by staff psychiatrist Dr. Kerstin Uy.  Tr. 204-210.  Despite Plaintiff's report of hallucinations, including voices and shadows flitting across the room, Dr. Uy concluded that Plaintiff's mental status was largely within normal limits and that she did not have a chronic, severe or persistent mental disorder.  Tr. 207-210.  Dr. Uy found that she suffered from mild to moderate depression and that she had a Global Assessment of Functioning ("GAF") score of 65, indicating mild symptoms.  Tr. 204-210.

Between March and July 2009, beginning the day after she filed her DIB and SSI applications, Plaintiff visited the emergency room at Miriam Hospital five times.  On March 25, 2009, May 20, 2009, and July 22, 2009, she went for back pain, was diagnosed with acute or chronic back pain and was discharged in stable condition on each occasion.  Tr. 231-240, 241-252, 283-292.  On April 24, 2009, she went for ankle pain and back pain.  Tr. 273-282.  On May 8, 2009, after two weeks of not taking her psychiatric medication, she went because she was hearing voices and seeing demons.  Tr. 259-260.  Plaintiff was examined by psychiatrist Dr. Doriana Morar, along with Dr. Tanya Thomas, who determined she did not require inpatient psychiatric treatment.  Tr. 265-267.  The notes from the Miriam emergency room visits indicate that she had normal mood and affect, that she was fully oriented, and that she was pleasant and cooperative.  Tr. 235, 246, 259-260, 276-277, 286.

After her July 22, 2009, emergency room visit, Plaintiff followed-up with Dr. Nilofar Syed at Miriam Hospital on July 29, 2009, to whom she reported feeling lower back pain, hearing voices and seeing demons.  Tr. 295-297.  Like Dr. Wolfson, Dr. Syed completed an Examination Report on or about February 17, 2010.  Tr. 415-418.  While Dr. Syed agreed with Dr. Wolfson's conclusion regarding physical limitations, he differed from Dr. Wolfson's evaluation of mental limitations in that, by the time of his examination of her (a year after the examination performed by Dr. Wolfson), Dr. Syed concluded that her mental impairments caused slight limitations.  Tr. 417.

In March 2010, Plaintiff was referred to Jewish Family Services after six months without psychiatric medications.  Tr. 422.  From April 2010 until March 2011, Plaintiff was under the psychiatric care of Dr. Thamara Davis.  Tr. 365, 407-410, 432-437.  After seeing Plaintiff four times from April to August 2010, for post-traumatic stress disorder, panic disorder and major depressive disorder, Tr. 432-439, Dr. Davis wrote a letter dated September 3, 2010, stating her opinion that Plaintiff "is not able to sustain gainful employment at this time."  Tr. 365.  By contrast, Dr. Davis's treatment notes from July and August 2010 indicate that Plaintiff was "doing better" and "felt better for approx. 3 weeks" in response to adjustments in medications.  Tr. 438-439.  Dr. Davis's treatment notes also reflect her finding that Plaintiff's mental status examinations were, at times, largely within normal limits.  Tr. 407-408.

On September 29, 2010, Plaintiff returned to Miriam Hospital for a follow-up visit with Dr. Kristal Young.  Tr. 419-421.  Dr. Young noted that Plaintiff was back on medication and that her mental health and mood had markedly improved; she also observed pain in the left knee, but full range of motion in the right.  Tr. 419-420.  On February 15, 2011, Dr. Young treated Plaintiff again and observed that medication had caused Plaintiff's mood to dramatically

4

improve.  Tr. 396-399.  Dr. Young noted that Plaintiff suffered acute pain in her left knee, but

did not experience pain in her right knee; her notes reference a 2009 image of the right knee that

showed no acute fractures and was "not contributory to her history currently."  Tr. 397, 419-421.

Dr. Young's treatment plan stated that Plaintiff "was written for an MRI of her left knee in order

to assess the ACL and PCL and from there we will decide whether or not she would need any

further surgery."  Id.

## II.    Travel of the Case

Plaintiff filed applications for DIB and SSI on March 24, 2009, alleging an onset of

disability as of October 1, 2007.  Tr. 113-118, 119-127.  To develop the record, the

Commissioner procured multiple medical reports and evaluations in connection with both her

initial application and her request for reconsideration.

On August 13, 2009, Clifford Gordon, Ed.D., reviewed the evidence and completed a

Mental Residual Functional Capacity Assessment and Psychiatric Review Technique form.  Tr.

298-315.  He concluded that Plaintiff could complete only basic tasks; he also found that her

ability to concentrate, interact socially and adapt was not significantly or moderately limited.  Tr.

298-300.  Non-examining consulting psychologist Dr. Slavitt affirmed Dr. Gordon's assessment.

Tr. 364.  On August 25, 2009, consulting physicians reviewed x-rays of Plaintiff's right ankle

and spine.  Tr. 351-352.  On September 24, 2009, Plaintiff was examined by a consulting

physician, Dr. McGunigal, who confirmed lower back and right ankle pain; he also found

physical limitations on walking and hopping, although she could bend, sit and stand.  Tr. 353-

355.  Dr. Purin, a non-examining medical consultant, completed a Physical Residual Functional

Capacity Assessment on December 17, 2009, after the Commissioner's denial of Plaintiff's

initial application.  Tr. 356-363.  He reviewed the evidence in Plaintiff's file and found her

exertionally limited to sitting for up to six hours a workday and standing or walking for up to two hours a workday.  Tr. 357.

Based on these evaluations and reports, the available medical records and the other information submitted by Plaintiff, her applications were denied initially and upon reconsideration.  Tr. 48-51, 54-58.  On May 8, 2010, she requested a hearing before an ALJ.  Tr. 60.

On May 12, 2011, ALJ Randy Riley conducted a hearing on Plaintiff's claims for DIB and SSI benefits.  Tr. 29-42.  Plaintiff, represented by counsel, and a vocational expert appeared and testified.  Id.  The administrative record before the ALJ contained Plaintiff's medical records evidencing all of the treatment described above.

The ALJ issued his written decision on May 24, 2011, concluding that Plaintiff was not disabled under the Act.  Tr. 5-21.  The administrative stage of the proceedings became final when the Appeals Council denied Plaintiff's request for review on September 13, 2011.  Tr. 1-3.  Plaintiff timely filed a civil action in this Court on October 31, 2011.  With the consent of the parties, the case was referred to a United States Magistrate Judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF No. 4.

**III.     The Administrative Hearing, ALJ Decision and Appeals Council Decision**

Most of the hearing focused on the ALJ's examination of Ms. Hazard regarding her vocational history, daily activities and mental and physical impairments.  Tr. 29-42.  Ms. Hazard confirmed that she lives alone, though her partner with whom she has sustained a long-term and positive relationship, lives in the same building.  Tr. 32, 39.  Despite her limitations, she testified that she is able to dress, shower, shop with a companion and do chores, like dishes, laundry,

vacuuming and sweeping.  Tr 34-35.  She described her mental discomfort around groups of people, her difficulty sleeping and her physical difficulties with standing and walking.  Tr. 35-37.

The vocational expert answered a series of hypotheticals proffered by the ALJ, in response to which he testified that Plaintiff could perform limited sedentary work, available both in Rhode Island and nationally, as long as she could work on a regular and continuing basis for eight hours a day, five days a week.  Tr. 39-41.  At the time of the hearing, Plaintiff submitted additional written evidence all of which was accepted for consideration by the ALJ.  Tr. 8.

In his decision, the ALJ began with the finding that Plaintiff met the insured requirements of the Act through September 30, 2013.  Tr. 10.  He then proceeded through the familiar five-step inquiry to determine the merits of Plaintiff's claim of disability.  After concluding that Plaintiff has not engaged in substantial gainful activity since October 1, 2007, at Step One, id., he proceeded to Step Two, finding that Plaintiff had the severe impairments of "depression, left knee, back, obesity, right ankle and hypertension," within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c).[1]  Tr. 11-15.  At Step Three, the ALJ found that none of these impairments, alone or in combination, met or medically equaled any "listed" impairments.  Tr. 15-16.  As to Plaintiff's depression, the ALJ noted that Plaintiff's mental condition failed to meet the Listing of Impairments for mental illness, see 20 C.F.R. 404, Subpart P, app. 1, because Plaintiff did not have any marked or extreme mental impairments.  Tr. 15-16.

---

[1] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will primarily cite to one set of regulations only.  See id.

The ALJ determined Plaintiff's residual functional capacity ("RFC")[2] at Step Four.  He concluded that Plaintiff could perform less than the full range of sedentary work as defined by 20 C.F.R. §§ 404.1567(a), 416.967(a), with the following limitations:

> [N]ever any bi-pedal food[3] [sic] operations from an exertional standpoint, and non-exertional limitations of occasional stairs, balance with a cane, stooping, kneeling, crouching, crawling; never ladders; and avoiding concentrated exposure to cold, heat, and hazards.

Tr. 16.  The ALJ also found that Plaintiff's work should be limited to simple, routine tasks, with no interaction with the public.  Tr. 16.  Based on the RFC and expert testimony from the vocational expert, the ALJ concluded that Plaintiff was not capable of performing her past relevant work as a cashier.  Tr. 19-20.

The ALJ addressed Plaintiff's psychiatric and emotional difficulties in making the RFC determination.  The ALJ found that the record demonstrated that Plaintiff is affected by depression, paranoia and hallucinations, but not to the degree that Plaintiff alleged.  Tr. 17.  The ALJ reached this conclusion in part by giving limited probative weight to the opinion of Dr. Davis in her letter of September 3, 2010, that Plaintiff was incapable of sustained gainful employment.  Tr. 19.  The ALJ reasoned that Dr. Davis's opinion was not supported by a "reasonable precise functional assessment supported by clinical findings" and was not consistent with the other medical evidence in the record.  Id.  In contrast, the ALJ pointed to Dr. Krystal Young's contemporaneous assessment on September 29, 2010, that Plaintiff's major depression symptoms had markedly improved and that Plaintiff's mood had improved dramatically once she went back on medications.  Id.

---

[2] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

[3] The reference to "food" is obviously a typographical error.  The ALJ's hypothetical to the vocational expert at the administrative hearing indicates that the ALJ's RFC finding is sedentary work with "never any bi-pedal foot operations."  Tr. 40.

The ALJ found that Plaintiff's medically determinable physical impairments could not reasonably be expected to cause the alleged symptoms to the degree alleged and that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible.  Tr. 17.  The ALJ reasoned that Plaintiff had not been hospitalized for any physical impairment and the administrative record did not contain any x-rays, MRIs, or similar diagnostic tests that show that Plaintiff is disabled.  Id.  The ALJ also noted evidence of pain and limitations on movement for the left knee, but that Plaintiff's right knee did not show any such evidence; she was able to walk.  Tr. 15, 17.  The ALJ concluded that Plaintiff had limitations secondary to her physical and emotional impairments, but they were not as severe as alleged by Plaintiff.  Tr. 17.  Among other things, he noted that Plaintiff handled her own finances, cooked for herself, took public transportation, visited with friends, cared for a kitten and hosted a New Year's party in 2011.  Tr. 14, 17, 402.

At Step Five, the ALJ relied on his RFC determination and the vocational expert's testimony to find that Plaintiff was capable of making a successful adjustment to other work.  Tr. 20-21.  Specifically, the ALJ found that Plaintiff could perform unskilled and sedentary positions that exist in significant numbers in the national and Rhode Island economies, such as bench hand, jewelry stringer and automatic grinding machine operator.  Tr. 20.  Accordingly, the ALJ found that Plaintiff is not disabled within the meaning of the Act.  See 42 U.S.C. § 1382c(a)(3)(A); Tr. 21.

On May 24, 2011, the ALJ informed Plaintiff of his written decision and that the Decision Review Board in the Commissioner's Office of Disability Adjudication and Review had selected Plaintiff's claim for review.  Tr. 5-7.  Soon after, the Commissioner cancelled the

Decision Review Board program.[4]  See 76 Fed. Reg. 24802-01 (May 3, 2011).  The Executive

Director in the Office of Appellate Operations informed Plaintiff that her case had been

transferred from the Decision Review Board to the Commissioner's Appeals Council, which

would treat the case as if she had filed a request for review with the Appeals Council.  Tr. 26-28.

On June 29, 2011, Plaintiff received another letter from the Executive Director that stated

Plaintiff had thirty days from June 22, 2011, to submit written papers to the Appeals Council in

support of Plaintiff's request for review.  See ECF No. 6-4.

        In response, Plaintiff sent a letter by facsimile to the Appeals Council on July 8, 2011,

that stated in pertinent part:

> **The undersigned requests a copy of the hearing transcript and
> an extension of time of 30 days thereafter to submit additional
> medical records and information**.
>
> [Plaintiff] had an MRI of her knee in June, 2011 which her doctor
> indicated was positive for meniscal tears.  She has also had further
> psychological treatment.  I have requested those records and will
> forward them to the Appeals Council upon receipt with a letter in
> support of [Plaintiff's] appeal.

See ECF No. 1-1 (emphasis in original).

        Plaintiff never received either a response to her July 8, 2011, letter or the requested

transcript from the Appeals Council.  See ECF No. 1, at 2.  However, she also did not carry out

her representation that she would submit the new records as soon as they were received by

counsel.  Plaintiff now contends that her proffer was actually contingent: if the Appeals Council

had responded to her request for an extension of time, she would have submitted additional

medical records to the Appeals Council that demonstrate that she is disabled.  See ECF No. 6-4.

---

[4] The Decision Review Board was a pilot program promulgated in 2006 to improve the appeals process that the
Commissioner implemented in the Boston Region of the Social Security Administration.  71 Fed. Reg. 16424-01
(Mar. 31, 2006).

On September 13, 2011, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final. Tr. 1-3. The Appeals Council's rationale for the denial stated simply, "We found no reason under our rules to review the [ALJ's] decision. Therefore, we have denied your request for review." Tr. 1.

To this Court, Plaintiff has submitted the following medical records:

(1)     An MRI dated June 17, 2011, on Plaintiff's left knee that shows chronic and degenerative tears;

(2)     Clinic notes and a letter from Dr. Young at Miriam Hospital dated July 6, 2011, that states Plaintiff "would have great challenges if placed in full time employment;"

(3)     Letter dated July 7, 2011, from Dr. Davis at Jewish Family Services that discusses Plaintiff's "severe symptoms" of poor mental health;

(4)     Medical Source Statement from Dr. Davis dated July 12, 2011, that shows marked and extreme limitations on Plaintiff's ability to work;

(5)     Clinic notes from Dr. Young at Miriam Hospital dated October 4, 2011, that describe new complaints of right knee pain and bronchitis; and

(6)     An MRI on Plaintiff's right knee dated October 31, 2011, that shows chronic and radial tears.

See ECF Nos. 6-2, 6-3, 6-5. She contends that they are not cumulative, but rather are material, so that this Court should remand for a new hearing at which they may be considered.

## IV.    Issues Presented

Plaintiff's arguments in support of reversal or remand of the Commissioner's decision are a bit opaque in that Plaintiff's papers do not contain an argument section. See Vallejo v. Santini-Padilla, 607 F.3d 1, 7 n.4 (1st Cir. 2010) (court is not required to entertain arguments that are not developed). Nevertheless, the Court gleans two matters placed in issue:

1.    The ALJ erroneously rejected the medical opinion of one of Plaintiff's treating physicians, Dr. Thamara Davis, and instead improperly relied on other evidence in the record.

11

2.   The Commissioner improperly precluded Plaintiff from submitting new and material evidence to the Appeals Council; and that the additional evidence warrants a remand because Plaintiff has good cause for not submitting it earlier.

See ECF No. 6-1; ECF No. 8.

**V.      Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact.  It must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148,

153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the

Commissioner, not the courts."  Brown, 71 F. Supp. 2d at 31 (citing Richardson v. Perales, 402

U.S. 389, 399 (1971)).  A claimant's complaints alone cannot provide a basis for entitlement

when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human

Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision on plenary review, however, if the ALJ

applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to

determine that she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)

(per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is

unnecessary where all of the essential evidence was before the Appeals Council when it denied

review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v.

Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir.

1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four

of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both Sentences.

Jackson v. Chater, 99 F.3d 1086, 1095-97 (11th Cir. 1996).  It has no inherent authority to enter

other types of remand orders.  Melkonyan v. Sullivan, 501 U.S. 89, 99-100 (1991).

To remand under Sentence Four, the Court must either find that the Commissioner's

decision is not supported by substantial evidence, or that the Commissioner incorrectly applied

the law relevant to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621

F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but

also was insufficient for district court to find claimant disabled).  Where the Court cannot discern

the basis for the Commissioner's decision, a Sentence Four remand may be appropriate to allow

her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir.

2001).  On remand under Sentence Four, the ALJ should review the case on a complete record,

including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)

(necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).

A Sentence Four remand is also appropriate when the determination of the Appeals

Council rests on an egregiously mistaken ground for its denial of review.  Mills v. Apfel, 244

F.3d 1, 5 (1st Cir. 2001).  The Court's role in reviewing the decisions of the Appeals Council is

narrow.  See id.; Marmol v. Astrue, No. 07-297, 2008 WL 2831256, at *10 (D.R.I. July 22,

2008).  Remand is appropriate only if the mistake is extremely or remarkably bad, or flagrant.

Id.  Appeals Council decisions that deny review "fall into one of two categories: those that give

an explanation for declining review, and those that give none at all."  Orben v. Barnhart, 208 F.

Supp. 2d 107, 110 (D.N.H. 2002).  When the Appeals Council gives no reason for its denial of

review, the decision is "effectively unreviewable."  Id. (citing Mills, 244 F.3d at 6); see also

Canales ex rel. Pagan v. Astrue, No. 07-474, 2009 WL 2059716, at *11-12 (D.R.I. July 13, 2009)

(Appeals Council's denial of review not egregious when the denial contained boilerplate

language).

After a Sentence Four remand, whether due to error by the ALJ or egregious error by the

Appeals Council, the Court enters a final and appealable judgment immediately, and thus loses

jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, Sentence Six of 42 U.S.C. § 405(g) provides:

> The court ... may at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing that there is new evidence
> which is material and that there is good cause for the failure to incorporate such evidence
> into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under Sentence Six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson, 99 F.3d at 1090-92; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139-43 (1st Cir. 1987). In a Sentence Six remand, the Court does not affirm, modify, or reverse the Commissioner's decision; and "it does not rule in any way as to the correctness of the administrative determination." Melkonyan, 501 U.S. at 98.  Rather, the Court remands the case because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the evidence might have reasonably changed the Commissioner's decision.  Id. Sentence Six allows the Court to remand to consider previously unavailable evidence; it does not grant a reviewing court power to remand for consideration of evidence previously considered by the Appeals Council.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).

With a Sentence Six remand, the parties must return to the Court after remand to file modified findings of fact.  Melkonyan, 501 U.S. at 98.  The Court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id. at 99, 101-02.  Following a Sentence Six remand, the Commissioner "must return to the district court to 'file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.'"  Id. at 98 (quoting 42 U.S.C. § 405(g)).

VI.     **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1505-404.1511.

A.      **Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not

speculate and try to glean from the record; remand so that the ALJ can explicitly set forth findings).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See id.

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(d).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794-95 (1st Cir. 1987) (per curiam).

**B.      Developing the Record**

Social Security proceedings are "inquisitorial rather than adversarial."  Sims v. Apfel,

530 U.S. 103, 110-11 (2000).  The ALJ and the Appeals Council each have the duty to

investigate the facts and develop the arguments both for and against granting benefits.  Id.  The

obligation to fully and fairly develop the record exists if a claimant has waived the right to

retained counsel, and even if the claimant is represented by counsel.  Id. at 112.

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine

whether the claimant is disabled.  20 C.F.R. §§ 404.1517 and 416.917; see also Conley v.

Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling this duty to conduct a full and fair

inquiry, the ALJ is not required to order a consultative examination unless the record establishes

that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo

Marin v. Sec'y of Health & Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§

404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987), Seavey, 276 F.3d at 5.

First, if a claimant is working at a substantial gainful activity, she is not disabled.  20

C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of

impairments that significantly limit her physical or mental ability to do basic work activities,

then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third,

if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not

prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the local or national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 78, 81 (1st Cir. 1982); 42 U.S.C. §§ 416(i), 423(a), 423(c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.   Capacity to Perform Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the local or national economy.  Seavey, 276 F.3d at 5.  To meet this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive

reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id. (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).  Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  Merola v. Astrue, C.A. No. 11-536A, 2012 WL 4482364, at *5 (D.R.I. Sept. 26, 2012).

### F.     Making Credibility Determinations

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349,

1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding."

Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d

1251, 1255 (11th Cir. 1983)).

## VII.   Application and Analysis

### A.      The Treating Physician's Medical Opinion

Plaintiff argues that the ALJ improperly discounted the opinion of one of her treating

physicians, Dr. Thamara Davis.  Plaintiff points to the one-page letter dated September 3, 2010,

which explains Dr. Davis's diagnosis of post-traumatic stress disorder, panic disorder and major

depressive disorder with psychotic features, states that Plaintiff continues to have auditory and

visual hallucinations with only moderate improvement and concludes that Plaintiff is not able to

sustain gainful employment.  Tr. 365.  Plaintiff appears to contend that the conclusion in this

letter regarding Plaintiff's inability to perform any work should have been afforded controlling

weight, while the other treating physicians (including psychiatrists) whose opinions are different

(Dr. Young, Dr. Uy, Dr. Syed and Dr. Morar) should have been given less weight.  Plaintiff does

not address the weight to be given to the non-examining consultants who opined on her mental

RFC (Drs. Gordon and Slavitt) and did not find severe limitations.

The ALJ gave limited probative weight to Dr. Davis's conclusory opinion that Plaintiff is

unable to work.  He focused instead on the other treating physicians whose medical opinions

were inconsistent.  Tr. 13-15, 17-19.  For example, Dr. Young opined that Plaintiff's mental

status markedly improved when she went back on medication.  Tr. 396-398, 419-421.  Similarly,

Dr. Uy concluded that she was alert, cooperative, coherent, goal directed and had normal speech;

he found that she suffered from mild to moderate depression, assessed a GAF score of 65 and

determined that she did not meet the requirements for a community support program admission.

Tr. 204-210.  Dr. Morar assessed Plaintiff as not requiring inpatient psychiatric admission and

recommended that she be discharged to home.  Tr. 267.  Dr. Syed's mental assessment found

only slight impairment in her ability to maintain attention and concentration and in making

simple work-related decisions.  Tr. 417.  Indeed, Dr. Davis's own treatment notes are

inconsistent with her letter, in that they indicate that Plaintiff was "pleasant," her mental status

was sometimes within normal limits and it improved from adjustments to her medication.  Tr.

407-408, 438-439.  Based on the treating physicians' medical opinions, the ALJ concluded that

when Plaintiff missed appointments or did not take mediations, her psychiatric symptoms

worsened, but they improved when she complied with treatment.  These findings are amply

supported by evidence in the record.  Tr. 205, 209, 235, 245-246, 259-260, 276-277, 286, 296,

316-318, 326, 331, 396.

      The ALJ properly considered the factors set forth in 20 C.F.R. § 404.1527(c) in declining

to afford Dr. Davis's opinion controlling weight.  See Haidas v. Astrue, No. 08-11274, 2010 WL

1408618, at *3 (D. Mass. Mar. 31, 2010) (ALJ is not required to expressly address each of the

factors in 20 C.F.R. 404.1527(d)(2)).[5]  The ALJ observed the limited length of Dr. Davis's

treating relationship.  Tr. 14, 18-19.  He specifically referenced the total absence of any evidence

that Dr. Davis had performed or relied upon a precise functional assessment supported by

clinical findings, in addition to the inconsistency of her opinion with the remainder of the record.

Tr. 14, 18-19.  He correctly disregarded Dr. Davis's conclusory statement regarding Plaintiff's

ability to sustain any employment.  20 C.F.R. § 404.1527(d)(1) (whether a claimant is "unable to

work" is an issue whose determination is committed to the Commissioner); 20 C.F.R. §

---

[5] The language in section 404.1527(d)(2) now appears in 404.1527(c).  See 77 Fed. Reg. 10651-01 (Feb. 23, 2012).

404.1527(d)(3) (medical source opinions as to whether claimant can work not entitled to any special significance); see Gray v. Heckler, 760 F.2d 369, 373-74 (1st Cir. 1985) (treating physician conclusion that claimant appeared to be "disabled" not binding on the Secretary).

The Court need go no further.  The conflict between the opinion of Dr. Davis on one hand and those of Drs. Morar, Syed, Uy and Young on the other, as well as the other substantial evidence, including Dr. Davis's own notes, is for the Commissioner to resolve, not the courts. Irlanda Ortiz, 955 F.2d at 769; Evangelista, 826 F.2d at 141.  Notably, like Dr. Davis, Drs. Morar and Uy also were treating physicians who specialize in psychiatry.  Substantial evidence supports the ALJ's conclusion that Plaintiff remained capable of performing a limited range of sedentary work.  The ALJ did not commit error in discounting Dr. Davis's opinion.

### B.    New and Material Evidence

Plaintiff argues that the Commissioner improperly precluded her from submitting additional evidence to the Appeals Council and that the proffer of additional evidence warrants a remand.  Plaintiff does not clearly state whether she seeks a remand under Sentence Four or Sentence Six of 42 U.S.C. § 405(g), or both Sentences.  Plaintiff's purportedly new evidence falls into two tranches: (a) medical records in existence and potentially available to the Appeals Council, including an MRI of the left knee; and (b) medical records that did not come into existence until after the Appeals Council decision, including an MRI of the right knee.  In addition to the MRIs, each of these sets includes additional notes and opinions from the same treating physicians whose medical records were considered by the ALJ.

In the group of new evidence that could have been presented to the Appeals Council are Dr. Young's letter and treatment notes of July 6, 2011, Dr. Davis's letter dated July 7, 2011, and the July 12, 2011, Medical Source Statement completed by Dr. Davis, all of which describe

Plaintiff's medical impairments that were well developed in the administrative record, including panic disorder, post-traumatic stress disorder, depression, leg pain and obesity.  Compare Tr. 11-15 with ECF No. 6-3; ECF No. 6-5.  To the extent that they opine that Plaintiff "would have great challenges if placed in a full time employment," ECF No. 6-3 at 4, and that Plaintiff is "unable to sustain gainful employment at this time," ECF No. 6-5, these are conclusory statements about Plaintiff's disability, are duplicative of the existing administrative record and would not affect the Commissioner's decision.  Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982) ("a physician's conclusions with respect to the ultimate question of disability are not binding on the hearing examiner").  At least some of the references support the ALJ's findings; for example, Dr. Young reaffirmed that "[t]he patient continues to see a psychiatrist at the Jewish Family Center . . . [t]he patient has dramatically improved her mood and is doing well."  ECF No. 6-3 at 2.

There is no reasonable likelihood that any of these records would affect the Commissioner's decision.  See Evangelista, 826 F.2d at 139-40.  Whether the analysis is focused on Sentence Four or Sentence Six, new evidence does not justify remand if it is merely cumulative of the evidence already in the record.  See Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); Evangelista, 826 F.2d at 139.  New evidence is "material" only if the Commissioner's decision might reasonably be different if the evidence had been before the Commissioner at the time of his decision.  Evangelista, 826 F.2d at 140; Falu v. Sec'y of Health & Human Servs., 703 F.2d 24, 27 (1st Cir. 1983).  Cumulative evidence does not rise to that standard.

Therefore, there is no need for this Court to decide whether the Appeals Council's failure to accept Plaintiff's proffer of them, despite Plaintiff's failure to submit them, constituted egregious error, justifying remand under Sentence Four or whether Plaintiff has established good

cause for her failure to submit them, justifying remand under Sentence Six.  They are merely cumulative and do not justify remand.

Plaintiff's proffered MRI of her left knee performed on June 17, 2011, before the Appeals Council decision, requires a more rigorous analysis.  It shows chronic and degenerative tears, ECF No. 6-3 at 1, a diagnosis not in the administrative record before the ALJ, and arguably is material because it could be seen as demonstrating that Plaintiff's left knee impairment was worse than the evidence showed.  Bauzo v. Bowen, 803 F.2d 917, 926 (7th Cir. 1986); Rawls v. Apfel, 998 F. Supp. 70, 77 (D. Mass. 1998).  On the other hand, the record before the ALJ referred to the plan to get an MRI of the left knee, "to assess the ACL and PCL and from there we will decide whether or not she would need any further surgery." Tr. 397.  Importantly, the administrative record included evidence of Plaintiff's "[o]ngoing knee pain" and her serious difficulties arising from her problems with her left knee.  See, e.g., Tr. 36, 397.  The ALJ's decision referenced left leg pain and made a specific finding that Plaintiff's left knee was a severe impairment.  Tr. 11, 15.  The RFC that formed the basis for the determination of no disability included significant limitations arising from her knee, among other impairments.  Tr. 16, 40-41.

This Court need not struggle either to sift through these references suggesting that the left knee MRI is merely cumulative or to determine whether there was good cause for Plaintiff's failure to submit it.[6]  Whether analyzed under Sentence Six or Sentence Four, it does not trigger the requirements for remand.

---

[6] Plaintiff does not present a convincing argument for demonstrating good cause.  Her July 8, 2011, letter to the Appeals Council stated that she would forward the new MRI of her left knee "upon receipt."  See ECF No. 6-4, ECF No. 6-6.  Plaintiff did not submit her "new" evidence "upon receipt."  Instead, she held it back until it was presented to this Court.  Good cause does not exist when a claimant has an opportunity to submit the evidence to the Appeals Council but does not do so.  See Schmidt v. Barnhart, 395 F.3d 737, 743 (7th Cir. 2005); Brewton v. Astrue, 1:09CV188, 2010 WL 3259800, at *13 (W.D.N.C. July 26, 2010).

The MRI of the left knee fails under Sentence Six because its content <u>was</u> effectively presented to the Appeals Council in Plaintiff's letter of July 8, 2011, which stated that she "had an MRI of her knee in June, 2011 which her doctor indicated was positive for meniscal tears." ECF No. 6-6.  <u>See, e.g.</u>, <u>Aguilar v. Astrue</u>, No. 10-528, 2012 WL 786246, at *2 (D. Ariz. Mar. 9, 2012) (letter from plaintiff's attorney treated as new evidence proffered to the Appeals Council); <u>Haddock v. Astrue</u>, No. 08-cv-393, 2009 WL 3162170, at *1 (D. Colo. Sept. 29, 2009) (same). Because it does not constitute new evidence, it does not qualify for remand within the meaning of Sentence Six.  The MRI on the left knee also fails under Sentence Four, which requires the plaintiff to demonstrate that the Appeals Council's determination to disregard it and deny review was infected by a flagrant or egregious mistake.  <u>Mills</u>, 244 F.3d at 5.  Plaintiff has not presented any basis for this Court to conclude that the Appeals Council made an explicit mistake or committed egregious error.[7]  <u>See</u> <u>Montalvo v. Barnhart</u>, 239 F. Supp. 2d 130, 136 (D. Mass. 2003); <u>Larocque v. Barnhart</u>, 468 F. Supp. 2d 283, 287 (D.N.H. 2006).  In any event, when, as here, the Appeals Council gives no reason for its denial of review, the decision is "effectively unreviewable."  <u>Orben</u>, 208 F. Supp. 2d at 110; <u>Canales ex rel. Pagan</u>, 2009 WL 2059716, at *11-12.

---

[7] Because the MRI of the left knee was before the Appeals Council, this Court need not wade into the procedural quagmire posed by consideration of whether there was an error of law created by the confusion over how to submit new evidence in the unique circumstances of this case, where the Commissioner canceled the Decision Review Board and transferred Plaintiff's case to the Appeals Council while the review was in progress.  Plaintiff could argue – though she has not – that the Appeals Council committed a mistake of law by failing to follow internal Social Security Administration procedures, which oblige it to review new evidence submitted by a claimant under certain conditions.  <u>See</u> 20 C.F.R. § 405.401(c).  The duty is set out in the Hearings, Appeals and Litigation Law Manual ("HALLEX").  <u>See</u> HALLEX § I-3-5-20, 1993 WL 643143, at *1.  The First Circuit has not ruled on the enforceability of HALLEX, and circuit courts that have addressed whether the Commissioner is required to follow HALLEX as a matter of law have differed.  <u>Dawes v. Astrue</u>, No. 11-CV-272, 2012 WL 1098449, at *3 (D. Me. Mar. 30, 2012); <u>see also</u> <u>Shave v. Apfel</u>, 238 F.3d 592, 596-97 (5th Cir. 2001) (claimant must demonstrate prejudice from Commissioner's failure to follow internal guidelines); <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1115 (9th Cir. 2003) (Social Security Administration's internal guidelines do not carry the force and effect of law).

The proffered medical records that did not come into existence until after the Appeals Council decision raise a different issue.  They consist of treatment notes of Dr. Young dated October 4, 2011, which discuss "lower leg pain worse now on the right side" and recommend an MRI of the right knee, as well as the MRI of the right knee performed on October 31, 2011.  ECF No. 6-2, 6-2.  These references to the right knee constitute new evidence that qualifies for consideration of remand under Sentence Six.  ECF No. 6-2.  However, there is no suggestion in any source in the record that a new MRI of the right knee was under consideration by any of Plaintiff's treating physicians during the time period at issue in the case.  When Plaintiff testified at the hearing that she had knee issues, she did not go into great detail regarding which knee she was talking about; nevertheless, the clear inference was that she was focused on the left knee.  Tr. 36.  Only one source, her final chart at Miriam Hospital, mentions that Plaintiff ever complained of right leg pain, and there is no indication of a plan for diagnostic tests or any treatment in response.  Tr. 260.  The ALJ decision specifically mentioned the lack of evidence of pain in Plaintiff's right knee.  Tr. 15.  This reference was well supported by substantial evidence.  In addition to the numerous physical examinations that do not allude to right knee pain, Dr. Young specifically referred to her full range of motion in the right knee joint as well as the absence of right knee pain.  Tr. 397, 420.

The threshold determination in considering a Sentence Six remand is whether the new evidence is material.  Evidence is "material" only if the Commissioner's decision "might reasonably have been different" had he had the opportunity to consider it.  Evangelista, 826 F.2d at 140.  Essential to the materiality requirement is that the new evidence relates to the time period for which benefits were denied.  Evidence reflecting a later-acquired disability or the subsequent deterioration of a previous non-disabling condition is not material.  Gullon ex rel.

27

N.A.P.P. v. Astrue, No. 11-099ML, 2011 WL 6748498, at *10 (D.R.I. Nov. 30, 2011) (quoting

Beliveau ex rel. Beliveau v. Apfel, 154 F. Supp. 2d 89, 94 (D. Mass. 2001) ("To be material, the

evidence must be both relevant to the claimant's condition during the time period for which

benefits were denied and probative.")).   The plaintiff bears the burden of demonstrating that a

piece of new evidence is material.   See Evangelista, 826 F.2d at 139.

        Given the dearth of record evidence of problems with Plaintiff's right knee, it is mere

speculation to assume that the injury exposed by the October 2011 MRI affected Plaintiff's

ability to work during the period covered by these applications.   See Gullon ex rel. N.A.P.P.,

2011 WL 6748498, at *10 (new evidence of a malady not mentioned before ALJ is not material);

see also Henriquez v. Astrue, 499 F. Supp. 2d 55, 58 (D. Mass. 2007).   In Gullon, the court

rejected as immaterial a new diagnosis dated five months after the ALJ decision because the

plaintiff had not shown that the impairment was present during the relevant period, and was not a

new condition or a subsequent deterioration of a non-disabling condition.   Gullon, 2011 WL

6748498, at *10.   Speculation that a condition may have existed during the relevant time period

does not warrant a Sentence Six remand.   See Hunter v. Astrue, 283 Fed. App'x 261, 263 (5th

Cir. 2008).   Indeed, Dr. Young's proffered October 4, 2011, notes suggest that the right knee

complaint was new.   ECF No. 6-3.

        The Court remains cognizant that Congress plainly intended that Sentence Six remands

"should be few and far between, that a yo-yo effect be avoided – to the end that the process not

bog down and unduly impede the timely resolution of social security appeals."   Evangelista, 826

F.2d at 141.   The mere fact that evidence post-dates agency proceedings does not establish good

cause.   Budzko v. Soc. Sec. Admin. Comm'r, 229 F.3d 1133, 1 (1st Cir. 2000).   The notes and

MRI pertaining to the right knee may be new evidence but they do not justify remand.

## VII.    <u>Conclusion</u>

For the reasons stated above, Plaintiff's Motion to Reverse or Remand Commissioner's

Decision (ECF No. 6) is DENIED and the Commissioner's Motion for an Order Affirming the

Decision of the Commissioner (ECF No. 7) is GRANTED.

A separate and final judgment shall enter.


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 11, 2012